UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| PATRICK COLLINS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOES 1-58, <br><br> Defendants. | CASE NO. 3:11-cv-00531-JAG |

### *AMICUS CURIAE* BRIEF OF STEELE HANSMEIER PLLC

### INTEREST OF THE *AMICUS CURIAE*

Steele Hansmeier PLLC is a law firm that is heavily involved in defending the rights of copyright holders against the veritable tidal wave of digital infringement that, if left unchecked, represents an existential threat to the for-profit creative arts sector of the United States economy. Steele Hansmeier has extensive experience litigating suits similar to this action and believes that these actions are the only feasible method for copyright holders to protect their rights against the onslaught of BitTorrent-based copyright infringement.

After reviewing the Court's October 5, 2011 Order and witnessing the jubilation of pro-piracy groups, Steele Hansmeier believes it is important for the Court to consider certain aspects of the decisions it cited in its order that may not have been apparent on the face of the decisions. Furthermore, Steele Hansmeier wishes to brief the Court on certain aspects of BitTorrent litigation that it has learned through its own extensive practice in this area.

Steele Hansmeier has reviewed the submissions of Plaintiff's counsel in this matter and has made every effort to avoid duplicating the arguments raised therein. Further, Steele Hansmeier has no knowledge of the conduct of Plaintiff's counsel in this litigation and takes no

position on the same. Finally, Steele Hansmeier has no relationship to Plaintiff's counsel and has not communicated with him or any party of interest in this litigation regarding this filing.

## INTRODUCTION

> Unfortunately by a kind of Gresham's Law, the bad, or harsh, procedural decisions drive out the good, so that in time a rule becomes entirely obscured by its interpretive barnacles.
>
> Charles E. Clark, *Special Problems in Drafting and Interpreting Procedural Codes & Rules*, 3 Vand. L. Rev. 493, 498 (1950).[1]

This observation by Judge Clark remains relevant after sixty-one years. It still remains to be seen whether "harsh" procedural decisions will redefine the Federal Rules of Civil Procedure away from the pragmatic and liberal ideals that influenced their drafting. Although it is to be expected that a lawsuit involving contemporary technology will raise novel factual issues, the true issue presently before the Court is a procedural one— and in interpreting procedural rules such as those regarding joinder, the Court should consider the broader effect that a given interpretation will have upon the purpose and function of the federal courts. Although a small subset of the judges in the Northern District of California are hesitant to allow joinder at the early discovery stage of litigation, courts across the country have held otherwise. The decisions of courts allowing joinder— at least at the early discovery stage of litigation— are consistent with the letter of the Rules and the ethos of their chief drafter.

## ARGUMENT

### I. THE COURT'S DECISION RESTS ON OUTDATED AUTHORITY AND AUTHORITY LACKING SUBSTANTIAL WEIGHT

In its October 5 Order, the Court rests its analysis on the decisions of other federal courts, primarily those within the Northern District of California. Most significantly, the Court "agrees with Judge Spero's analysis in a recent decision," namely *Hard Drive Productions, Inc. v. Does*

---

[1] Charles E. Clark, chief drafter of the Federal Rules of Civil Procedure, served on the United States Court of Appeals for the Second Circuit from 1939 to 1963, including service as Chief Judge from 1954 to 1959.

*1–188*, No. C-11-01566 (N.D. Cal. Aug. 23, 2011), ECF No. 26. However, this decision was itself based on a finding that other decisions were "persuasive" decisions which have since been reconsidered or which lack substantial weight. *Id.* at 18 ("[T]he Court finds the reasoning in *Boy Racer* and *Diabolic Video Productions*, *Pacific Century International*, and *Millennium TGA* persuasive.").

In addition to citing Judge Spero, the Court also directly cites two of the decisions that Judge Spero relied upon. These are *Diabolic Video Productions, Inc. v. Does 1–2,099* and *Millennium TGA, Inc. v. Does 1–21*. *Amicus* Steele Hansmeier wishes to provide the Court with a fuller understanding of these decisions, and would show the Court that the former was based on a limited technical understanding of the issues while the latter was, in fact, reconsidered and reversed after further briefing.

### A. *Diabolic Video Productions, Inc. v. Does 1–2,099*

The Honorable Judge Grewal's opinion in *Diabolic Video Productions, Inc. v. Does 1–2,099*, No. 10-5865 PSG, 2011 WL 3100404 (N.D. Cal. May 31, 2011), cited previously by this Court, should be read as having limited precedential impact. Judge Grewal made clear that his opinion in *Diabolic* was tentative and based upon a limited technical understanding of the issues. Judge Grewal was refreshingly honest, concluding his order by announcing that "the court is limited in its technical understanding"— admitting, in effect, that future reconsideration of the propriety of joinder might be appropriate in a less extreme case.[2] As such, *Amicus* urges that Judge Grewal's reasoning should not be applied without qualification to a case with mere dozens, rather than thousands, of Doe defendants.

### B. *Millennium TGA, Inc. v. Does 1–21*

---

[2] *Diabolic Video Prods., Inc. v. Does 1–2,099*, No. 10-5865 PSG, 2011 WL 3100404, at *3–4 (N.D. Cal. May 31, 2011). In the previous sentence, Judge Grewal notes with apparent shock that "Diabolic proposes to join not merely dozens, but thousands, of defendants in a single action." *Id.*

The Honorable Judge Conti reconsidered and reversed his opinion in *Millennium TGA, Inc. v. Does 1–21*, No. 11-2258 SC, 2011 WL 1812786 (N.D. Cal. May 12, 2011), ECF No. 8, an opinion cited previously by this Court. After finding joinder to be improper in that decision, the plaintiff submitted a First Amended Complaint (*see id.*, ECF No. 9), as well as a revised *ex parte* application for leave to take early discovery (*see id.*, ECF No. 10), and the result was a clear-cut reversal of the court's previous decision. In a new Order Granting Request For Leave to Take Early Discovery, issued on July 22, 2011, Judge Conti found that the plaintiff had cured the previously-identified deficiencies in its filings by specifically alleging the Doe defendants' participation in a single swarm— an allegation which Judge Conti found "plausible in light of the level of detail provided by the Hansmeier declaration . . . ." *Id.*, ECF No. 14. In other words, Judge Conti reconsidered his prior decision and reversed it in a clear-cut manner. Furthermore, Judge Conti's eventual conclusion that the Doe defendants' participation in a single swarm justifies joinder at the identification stage of the litigation is precisely the opposite of the conclusion at which this Court arrives in its October 5 Order.[3]

It is important to recognize that the judicial approach to joinder in BitTorrent-based Internet copyright infringement cases within the Northern District of California is still developing. Seemingly clear-cut opinions, such as the cited opinion by Judge Conti in *Millennium TGA*, have been reconsidered and effectively reversed.[4] Other opinions, such as those of Judge Grewal, were based on admittedly limited technical knowledge and should be viewed and weighed accordingly. Considering that the Court's October 5 Order was largely

---

[3] *See* Order 2–3, Oct. 5, 2011, ECF No. 9 (criticizing Plaintiff's "swarm theory" and citing *Millennium TGA* in support of the proposition that participation in the same swarm is insufficient to satisfy Rule 20(a)).

[4] For another example, see *Hard Drive Prods., Inc. v. Does 1–42*, No. C-11-01956 EDL (N.D. Cal. July 14, 2011), ECF Nos. 8 & 14. After denying applications for early discovery twice, the Honorable Judge Laporte later determined that joinder of the parties was appropriate and granted *ex parte* discovery without severing any parties from the case. *See id.*, ECF No. 20.

supported by these decisions, as well as by Judge Spero's opinion in *Hard Drive Productions, Inc. v. Does 1–188*—which itself relied upon these and other outdated or limited decisions—this Court should be similarly willing to reconsider its reasoning.

> II. **A BLANKET RULING THAT JOINDER IS INAPPROPRIATE AT THE IDENTIFICATION STAGE OF BITTORRENT-BASED INTERNET COPYRIGHT INFRINGEMENT SUITS WOULD CONSTITUTE AN ILLOGICAL APPLICATION OF THE FEDERAL RULES OF CIVIL PROCEDURE**

The Court should decline to exercise its power to sever multiple Doe Defendants before they have been identified because neither the Court nor Plaintiff can know how many Doe Defendants truly exist before that time. Not only is allowing joinder at this stage of the litigation consistent with the Federal Rules, but in fact severance at the identification stage of the litigation would constitute an illogical application of those rules which would raise the expense of litigation for both Plaintiff and Defendants and prejudice Plaintiff's ability to protect its substantive rights. Under the Federal Rules, "the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Joinder is strongly encouraged because it promotes judicial economy. It inherently allows parties to join, *inter alia*, related parties and have common issues of law and fact decided for all of the parties in a single decision.

> A. **The number of actual Doe Defendants is unknown to both the Court and to Plaintiff before they have been identified by their ISPs.**

At this stage of the litigation, a single individual can be associated with multiple defendants. By way of example, in a case filed in the Northern District of Illinois against 28 Doe defendants, *each* of the IP addresses listed in the complaint was, in fact, associated with the *same* individual. *See* Pl.'s Notice of Dismissal With Prejudice, *First Time Videos, LLC v. Does 1-28*, No. 1:11-cv-2982 (N.D. Ill. Sept. 26, 2011), ECF No. 15. Had that court severed the case before

the plaintiff had completed early discovery, the plaintiff would have unwittingly filed 28 *separate* copyright infringement actions against the *same* anonymous individual. This would have entailed 28 separate filing fees, complaints, civil cover sheets, attorney appearance forms, corporate disclosure statements, motions for expedited discovery, memoranda of law in support thereof, declarations, proposed orders, motion hearings and subpoenas. The responding Doe defendant would have received 28 separate ISP notification letters, would have had to file 28 separate motions to quash and answer 28 separate complaints— lest he be subject to a default judgment. The 28 separate actions could have been before all of the judges in the Eastern Division of the Northern District of Illinois and would almost certainly have received some level of inconsistent treatment. No plausible argument can be made that severance would have been appropriate in this real world example. The same is true here, where the same situation cannot be excluded from the realm of likelihood.

> **B.    Severance prior to identification of the Doe defendants would separate an essentially unitary problem.**

While joinder rules are ultimately discretionary in nature, this discretion is not without limit. According to the Second Circuit, "an attempt to separate an essentially unitary problem is an abuse of discretion." *Spencer, White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974) (emphasis added); *see also SEC v. Leslie*, No. C 07-3444, 2010 WL 2991038 at *4 (N.D. Cal. July 29, 2010) (citing the abuse of discretion standard set forth in *Spencer, White & Prentis, Inc.*); *Zaldana v. KB Home*, C 08-3399, 2010 WL 4313777, at *1 (N.D. Cal. Oct. 26, 2010). Before the identity and number of actual Doe defendants that have violated a content producer's substantive rights are known, immediate severance of the parties may sever an identical claim against an identical individual— the purest imaginable form of a unitary problem.

The Honorable Judge Howell of the United States District Court for the District of Columbia presciently anticipated the multiple IP address-per-individual scenario outlined above. Judge Howell reasoned that severance would be especially contrary to the interests of any individuals who have been named as Doe Defendants multiple times in the same suit for multiple observed instances of infringing activity:

> [S]ome IP addresses may relate to the same person, who is engaged in the allegedly infringing activity claimed by plaintiffs. Severance of the putative defendants associated with different IP addresses may subject the same [ISP] customer to multiple suits for different instances of allegedly infringing activity and, thus, would not be in the interests of the putative defendants.

*Call of the Wild Movie, LLC v. Does 1–1,062*, No. 10-455, 2011 WL 996786, at *6 (D.D.C. Mar. 22, 2011).

Just as personal jurisdiction analysis is premature when the Court does not know a defendant's identity— and thus cannot know whose contacts with the forum jurisdiction need be evaluated— so too is it premature at the identification stage of litigation to sever unidentified parties. Without knowing who the parties are (i.e., whether a given individual is associated with some or all of the IP addresses in a complaint), a court cannot know whether it is severing identical claims against the same individual. Moreover, the unfortunate individual who is severed multiple times from the same action as a result of premature severance would face multiple claims, multiple lawsuits and a much higher overall litigation burden than would have occurred had a court deferred the severance question merely until the plaintiff received identifying information from the ISP(s).

### III. THE COURT CAN AND SHOULD POSTPONE SEVERANCE AT LEAST UNTIL IT CAN DETERMINE WHETHER IT IS SEVERING MULTIPLE CLAIMS AGAINST IDENTICAL INDIVIDUALS

*Amicus* urges the Court to view the identification of Doe defendants as a unique procedural stage in BitTorrent-based Internet copyright infringement actions that constitutes a

unitary problem. This would not be practicable if the Court could not later sever the claims against Does when and if administrative difficulties arise. However, Rule 21 of the Federal Rules of Civil Procedure provides the Court with the appropriate tool necessary to ensure fairness and judicial economy through all stages of the litigation. Because joinder at the identification stage of the litigation promotes the priniciples of fundamental fairness and judicial economy— even if joinder might not accomplish such at later stages— and because the Court has the power to structure litigation and to sever claims and defendants should it become necessary, *Amicus* urges the Court to postpone severance until the Doe Defendants have been identified.

      **A.    Joinder promotes principles of fundamental fairness and judicial economy at the identification stage of BitTorrent-based Internet copyright infringement litigation.**

Federal courts nationwide have found that at this stage of BitTorrent-based Internet copyright infringement litigation— where a plaintiff is simply seeking the identities of individuals associated with IP addresses— joinder is not only consistent with principles of fundamental fairness, but actually promotes the same. *E.g.*, *First Time Videos*, 2011 WL 3498227, at *11 ("[J]oinder at this stage is consistent with fairness to the parties and in the interest of convenience and judicial economy because joinder will secure the just, speedy, and inexpensive conclusion for both FTV and any future named defendants . . . . [Severance would] make it highly unlikely that FTV could protect its copyrights in a cost-effective manner."); *Call of the Wild Movie*, 2011 WL 996786, at *4-7 ("Joinder will avoid prejudice and needless delay for the only party currently in the case, namely the plaintiff, and promote judicial economy. . . . The putative defendants are not prejudiced but likely benefited by joinder, and severance would debilitate the plaintiffs' efforts to protect their copyrighted materials and seek redress . . . ."). Any prospective concerns that a court may have about the feasibility or propriety of joinder at later stages of the litigation may be addressed through the inherent power of a federal court to

structure litigation, including through Rule 21 severance where appropriate. Plaintiff urges the Court to postpone severance until such issues actually arise.

> **B.    Prospective problems with case management can be addressed through Rule 21 severance when and if such problems arise.**

There exist many theoretical discretionary concerns which could potentially justify severance at a later stage of a BitTorrent-based Internet copyright infringement lawsuit. For example, joinder could result in a logistically unmanageable case at the point where it becomes necessary to accommodate all defendants and attorneys in a single courtroom. "[S]cores of mini-trials" may be necessary to address "the unique defenses that are likely to be advanced by each individual Defendant." *Hard Drive Prods., Inc. v. Does 1–188*, No. C-11-01566, at 19. Or, each defendant could exercise his right to attend the depositions of every other defendant. *Id.*

This series of discretionary concerns are similar in a single respect— they are prospective concerns which do not describe situations that have yet occurred, or are certain to occur, in this or any BitTorrent-based Internet copyright infringement litigation. Anticipated events such as case management conferences and trial cannot truly occur until a plaintiff has identified and named the actual Doe defendants responsible for infringing its copyrighted creative work(s). Putative defendants cannot logically attend a deposition until they have been identified and named. And while it may prove to be true that each individual defendant will present unique defenses, it does not follow that joinder at the identification stage of the litigation is inappropriate. Such defenses and individual circumstances are still prospective while the Doe Defendants remain anonymous, and "[p]rospective factual distinctions . . . will not defeat the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B) at this stage of the litigation." *First Time Videos*, 2011 WL 3498227, at *10. "Any future named defendant will

still be considered individually for any ruling on the merits . . . belying the notion that joinder will deny any defendant individual justice." *Id.* at *11.

Federal courts have the inherent power to structure litigation. Courts can sever parties from a case because of misjoinder problems on their own accord, at any time. *See* Fed. R. Civ. P. 21. Speculative discretionary concerns should therefore not prevent the Court from allowing joinder at the preliminary identification stage of litigation, when justice would be better served by waiting until the Court has a more complete understanding of the identities of all parties involved. The Court should allow the essentially unitary problems in this action— including the identification of Doe Defendants— to be handled jointly, while also allowing each Doe Defendant to be heard individually after being named, when and *if* any actual factual distinctions or administrative difficulties actually arise. In doing so, the Court will promote fundamental fairness and judicial economy. *Amicus* urges the Court to view its Rule 21 severance power as a solution to such problems that can be utilized when and if necessary— but not before the actual Doe Defendants responsible for infringing Plaintiff's legal rights have been identified.

## CONCLUSION

*Amicus* respectfully submits this brief for the Court's consideration as it rules on the forthcoming decisions.

          Respectfully Submitted,

**DATED:** October 19, 2011

         By: /s/ Timothy V. Anderson
            Timothy V. Anderson, Esq.
            Anderson & Associates, PC
            2492 North Landing Rd, Ste 104
            Virginia Beach, VA 23456
            VSB 43803
            *Counsel for Plaintiff*
            (757) 301-3636 tel
            (757) 301-3640 fax
            timanderson@virginialawoffice.com